**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>   Plaintiff,<br><br>v.<br><br>Alicia Ann Pierce,<br><br>   Defendant. | No. CR-18-01532-001-TUC-RM (JR)<br><br>**ORDER** |

Pending before the Court is Defendant's Motion for Specific Performance and for Reassignment of Case to a Different District Court Judge (Doc. 245), to which the Government responded (Doc. 247). For the following reasons, the Court will deny Defendant's Motion for Specific Performance and for Reassignment of Case (Doc. 245).

**I.   Background**

On February 16, 2023, Defendant and the Government entered into a disposition agreement to resolve the allegations in the August 17, 2022 Petition to Revoke Supervised Release. (Doc. 223.) The agreement stipulated to nine months of incarceration with no additional term of supervised release. (*Id.*) On April 12, 2023, at the final disposition hearing, the Court rejected the agreement, stating in part:

> And I hesitate to accept the agreement. I understand that this was negotiated by the parties. It just seems that there's been little, if any, effort on Ms. Pierce's part to comply with the conditions of supervision even though she's received numerous breaks: from the last time she was here, and from the time she received a sentence of time served in 2019, and then another sentence of time served in July of this year.

(Doc. 228; Doc. 230 at 4:14-21.)

Later in the hearing, the Court asked the Government for its position, and the Government provided the following comments:

> The government shares the Court's concerns with what the disposition agreement is. Honestly, your Honor, in my inexperience, I drafted an agreement at the highest end of the guideline range which was nine months and thought to myself this seems pretty low considering she was facing 46 to 57 months. But it was at the high end of the range so I stipulated to that. If the Court believes that that is not appropriate, I will go back to the drawing board, get with people who are more experienced, and get with the defense and come up with an appropriate resolution. But the dispo agreement is to nine months which is the high end of the applicable guideline range.
>
> And I agree with probation that her performance, in their words, was abysmal. She did not try at all. She received a significant benefit of not going to prison for 46 to 57 months. I believe she spent around 30 days pretrial incarceration the first time -- 38 days, and then her first supervised release was 121 days. And that was time served which she had already spent in custody for that. Her drug abuse is severe but she doesn't try. She's been granted opportunity after opportunity to get her life back on track, given the services of probation, and she fails to do so. She did the same thing the first time she was revoked, the second time she was revoked, and doesn't seem to learn.
>
> So if the Court does accept the agreement, we are asking for the nine months which is the top of the range. And if the Court does not accept the parties' agreement, we'll go back and come up with something appropriate.

(Doc. 230 at 7:17-8:19.) The Court instructed the parties on parameters for a new agreement. (*Id.* at 12:22-13:3.)

The parties then entered into a new disposition agreement with a stipulated twelve-month sentence and no supervised release to follow. (Doc. 245 at 4; Doc. 247 at 1.) The Court rejected the new agreement. (Doc. 236.) Defendant now brings this Motion for Specific Performance and for Reassignment of Case (Doc. 245).

**II.    Discussion**

In its Motion for Specific Performance and for Reassignment of Case, Defendant argues that the "Government breached its contractual obligations by failing to defend its disposition agreement at the April 12, 2023 hearing." (Doc. 245 at 5.) Pursuant to *United States v. Heredia*, 768 F.3d 1220 (9th Cir. 2014)[1], Defendant requests that the

---

[1] Defendant notes the instant case is distinguishable from *United States v. Heredia*, 768 F.3d 1220 (9th Cir. 2014) in that *Heredia* involved plea bargaining under Federal Rule of

Court order the Government to reoffer the original disposition agreement of nine months incarceration with no additional term of supervised release. (Doc. 245 at 1.) To remedy the Government's alleged breach, Defendant moves the Court to reassign the case to a different district court judge. (*Id.*)

In its Response, the Government states that it will "provide the remedy that the defendant is seeking and reoffer the initial disposition agreement" of nine months of incarceration with no supervised release to follow. (Doc. 247 at 2.) The Government disputes that it breached its duty to defend the disposition agreement and thus contends that "the requirement to transfer the case to a different district court is not applicable here." (*Id.* at 2-3.) However, the Government asserts that "reassigning the case would result in the cleanest record moving forward." (*Id.* at 3.)

Because the Government affirms that it will reoffer the original disposition agreement, the only issue remaining for the Court is whether the Government breached its duty to defend the disposition agreement, thereby warranting reassignment of the case to another district court judge.

"The government breaches its agreement with the defendant if it promises to recommend a particular disposition of the case, and then either fails to recommend that disposition or recommends a different one." *Heredia*, 768 F.3d at 1231. Breaches can be explicit or implicit. *Id.* A prosecutor breaches her agreement when she makes comments "for only one purpose: to influence the district court to impose a harsher sentence." *Id.* at 1232. The Ninth Circuit has admonished that the Government "may not superficially abide by its promise to recommend a particular sentence while also making statements that serve no practical purpose but to advocate for a harsher one." *Id.* at 1231. "When the district court finds that the government breached a Rule 11(c)(1)(C) agreement and the defendant timely moves for specific performance, the district court must grant the

---

Criminal Procedure 11, while this case involves a disposition agreement. (Doc. 245 at 7.) Defendant argues that the Court should apply *Heredia* here because the case law on disposition agreements is less prevalent, and the Ninth Circuit has cited plea agreement cases when evaluating the enforceability of disposition agreements. (Doc. 245 at 7.) To resolve this Motion, the Court will assume, without deciding, that *Heredia* applies.

- 3 -

motion." *Id.* at 1236.  The district court must also reassign the case to another district judge "to ensure that the decision to accept or reject the agreement will be untainted by the breach." *Id.* at 1236.

The Ninth Circuit analyzes the government's comments "as a whole and in context" when considering whether it breached its agreement with the defendant. *Id.* at 1234. In *Heredia*, the parties agreed to recommend the defendant receive a term of incarceration on the low end of the Sentencing Guidelines and a term of supervised release. *Id.* at 1232.  The Ninth Circuit found that the Government breached its agreement "through its repeated and inflammatory references to [the defendant's] criminal history in its sentencing memorandum." *Id.*  The Court found it significant that the Government's "central theme" was that the defendant was a "dangerous recidivist" and that the Government's statements were not "made off the cuff or in response to commentary or argument by the defense." *Id.*  The Court concluded that "as a whole and in context," the Government's comments "served 'no purpose' but to argue for a harsher punishment than it had agreed to recommend." *Id.* at 1234 (quoting *United States v. Whitney*, 673 F.3d 965, 971 (9th Cir.2012)).

The Ninth Circuit also emphasized the context of the government's comments in its analysis in *United States v. Minasyan*, 4 F.4th 770 (9th Cir. 2021) (2022).  In that case, the defendant argued that the government breached its plea agreement, in part, by making prejudicial use of evidence at the sentencing hearing. *Id.* at 781.  At the sentencing hearing, the government concurred with the district court that a light box—which can be used to trace signatures and was associated with blank prescription pads—was a "hallmark of fraud." *Id.*  The Ninth Circuit found that the government's endorsement of the district court's statement did not breach the agreement. *Id.*  First, the Court reasoned that the government had permissible reasons to discuss the light box, chiefly the government's reserved right to discuss the government's loss calculation. *Id.* at 782. Next, the Court reasoned that the discussion of the light box was brief and not a focal point of its presentation to the district court. *Id.*

Here, in reoffering the original disposition, the Government explains that its comments at the April 12, 2023 hearing were not intended to convince the Court to reject the agreement. (Doc. 247 at 2.) Rather, the Government contends that "the comments were meant to acknowledge the Court's stated concerns about the agreement, discuss the agreement that was before the Court, and propose a plan to move forward in the event that the Court did reject the agreement." (Doc. 247 at 2.) As *Heredia* instructs, the Court must evaluate the context of the government's comments. Here, it is notable that, unlike the unprompted comments in *Heredia*, the Government's comments in this case were "made off the cuff" and in direct response to the Court indicating that it was inclined to reject the parties' disposition agreement. Given these circumstances, the Government reasonably provided a path forward by explaining "if the Court does not accept the parties' agreement, we'll go back and come up with something appropriate." (Doc. 230 at 8:16-19.)

Furthermore, as in *Minasyan*, the Government's discussion of Defendant's performance during supervised release "was brief and was not a focal point of its presentation to the district court." *Minasyan*, 4 F.4th at 782 (9th Cir. 2021). Specifically, the Government dedicated much of its discussion to explaining its rationale in drafting the disposition, stating that it "drafted an agreement at the highest end of the guideline range[,] which was nine months." (Doc. 230 at 7:19-20.) The Government conceded that the guideline "seem[ed] pretty low," but it reiterated its justification that the agreement "was at the high end of the range[,] so I stipulated to that." (*Id* at 7:21-23.) The Government emphasized this justification at least two additional times. (*Id.* at 8:1-3; 16-17.) In its closing, the Government made clear that it was "asking for the nine months, which is the top of the range." (*Id.* at 8:16-17.)

Based on the foregoing, the Court finds that the record supports the Government's assertion that its comments served a purpose other than advocating for a different or harsher disposition. That is, the Government's comments served to recognize the Court's apprehensions about the disposition agreement, discuss the development of the

agreement, and propose a path forward if the Court rejected the agreement. Accordingly, the Court finds that the Government did not breach its disposition agreement, and the Court declines to transfer the case to a different district judge.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Specific Performance and for Reassignment of Case to a Different District Court Judge (Doc. 245) is **denied**.

Dated this 7th day of November, 2023.

_____
Honorable Rosemary Márquez
United States District Judge